SILVER, *Appellant*, v. THE KANSAS CITY, ST. LOUIS & CHICAGO RAILROAD COMPANY.

**Railroads**: FENCES: KILLING STOCK: TRESPASS OF STOCK. Under section 809, Revised Statutes 1879, the obligation of a railroad company to fence its road, is not postponed until the completion of the road and the running of cars thereon for the carriage of freight and passengers for hire. Although one of the objects of the statute be the security of passengers and employes in transit, its primary object is to prevent the killing of stock and their trespasses upon adjoining fields: and when the necessity for such protection to the owners of land and stock begins, then the obligation to fence attaches; and the company will be liable for the damages caused by its failure to fence, after a reasonable time for the erection of fences has elapsed.

2. ——: ——: ——: ——. The liability of a railroad company for failure to erect fences on the sides of its road under the statute, cannot be defeated by its contract with another person to erect such fences.

*Appeal from Audrain Circuit Court.*—HON. G. PORTER, Judge.

REVERSED.

*Ira Hall* for appellant.

*Macfarlane & Trimble* for respondent.

MARTIN, C.—This was an action against a railroad company for the killing of stock, and for damages to growing crops. The petition was filed on the 4th day of January, 1879, and contains four statements or counts. In the first the plaintiff sues for the killing of seventeen sheep, valued at $59.50, on the defendant's track, to which they had strayed by reason of defendant's failure to erect fences as required by law, which now appears in section 809 of the statutes of 1879. This is an action under the statute, and double damages are asked. In the second count the plaintiff sues at common law for negligence in killing the same stock, claiming single damages only. In the third count

he sets out an action under the same section of the statute, for damages in the sum of $50, inflicted on his growing crops by stock, which had entered his fields by reason of the defendant's failure to build fences as required in said section. In this count he asks for double damages. In the fourth count he sues at common law for the same destruction of crops, alleging that defendant, by its servants and agents, had unlawfully thrown down the fences inclosing his fields, whereby cattle and other animals had entered upon and destroyed the crops growing therein.

It will be seen from this statement, that the petition contains two statutory actions for omission of the defendant to build fences, one for sheep killed on the track, the other for destruction of growing crops by cattle, and two common law actions for the same injuries, one sounding in negligence, and the other in trespass. As the legal sufficiency of these counts has not been urged before us, I will not consider them with reference to that point.

The answer contains a denial of the allegations of the petition. It also contains a special plea or defense, to the effect, that defendant had the right and power to construct a railroad through the plaintiff's lands; that it had bought and paid plaintiff for the right of way through them; that it had entered into a contract with the Chicago & Alton Railroad Company, a corporation under the laws of Illinois, by the terms of which the latter corporation was to construct the defendant's road from Mexico to Kansas City; that said last mentioned company had sub-let to Messrs. J. S. Wolff & Son the construction of a certain part of the road, including the part running through plaintiff's lands; that said J. S. Wolff & Son went upon said lands and constructed the same, doing no more injury than was necessary to conveniently build said road; that if said J. S. Wolff & Son unlawfully threw down, or left down the fences inclosing plaintiff's lands, such acts were without the authority of the defendant, and were wholly outside their authority

as contractors, and for which defendant ought not to be held responsible.

The case was tried by a jury. The evidence submitted by plaintiff tended to prove that defendant's railroad ran through plaintiff's inclosed and cultivated fields, that in May, 1878, the road was constructed through said fields; that during the construction, the fences running across the right of way were torn down; that no fences were built along either side of the road to protect the plaintiff's fields from the incursions of stock; that by reason of the want of such fences, cattle, horses and other stock passed into plaintiff's fields and damaged his crops to the extent of $45; that defendant's road was completed through plaintiff's fields about the 1st day of June, 1878, and freight cars were run over the road; that no fences were built alongside of the road until sometime in the fall of 1878; that no other protection of the plaintiff's fields was provided by defendant, and that two-thirds of the damage complained of was after the completion of the road through plaintiff's land. The plaintiff also gave evidence tending to prove that in the month of August, 1878, seventeen sheep of the value of $47, belonging to him, strayed from inclosed fields, through which the road passed, by reason of a want of a fence along defendant's road, and were killed by the engines and cars on defendant's road; that trains of open and box cars had been running back and forth on the road since the completion of it over plaintiff's land in June, 1878.

Defendant's evidence tended to show that defendant had acquired the right of way over plaintiff's land; that the construction of the road over it was made by J. S. Wolff & Son, as contractors, who hired and controlled the workmen, and that the engines and cars run upon the road prior to plaintiff's alleged damage, were only used in carrying supplies to be used in the construction of the road. Defendant also produced documentary evidence of the contract with the Chicago & Alton Railroad to construct the road, also of the sub-contract of J. S. Wolff & Son to build

that portion of it which extended over plaintiff's lands. The contract with the Chicago & Alton Railroad included a perpetual lease of the whole road to it, at a rental equivalent to a designated portion of the profits and earnings of the road.

At the close of the evidence the court refused the instructions asked by plaintiff. They need not be considered for the reason that the law governing the case is sufficiently involved in the instructions given at the instance of defendant. In these instructions, the jury were told that their verdict must be for the defendant on the statutory actions in the first and third counts of the petition, unless the killing of the sheep in the first count and the destruction of the crops in the third count, happened after the completion of the road, and after the company had commenced running trains of cars thereon, for the carriage of freight and passengers for hire. In respect to the common law action for the killing the sheep contained in the second count, the jury were told that they could not find for the plaintiff unless the train of cars was managed or controlled by defendant or its employes, and the defendant was wanting in the exercise of reasonable care in running the train, and in reasonable effort to avoid striking the sheep, and the killing was the result of such want of care or negligence. In respect to the fourth count which related to trespass in throwing down fences, the jury was instructed to find for defendant, if the defendant had placed the construction of its road in charge of the Chicago & Alton Railroad as contractors, and that company had sub-let the construction thereof to J. S. Wolff & Son, and the trespass complained of had been done by said J. S. Wolff & Son or their employes. Upon the giving of these instructions, the plaintiff took a non-suit, which the court refused, on motion of plaintiff, to set aside. The case comes by appeal from this action of the court.

There was no evidence coming from either side to support a verdict on the two common law counts, no evidence

of negligence or want of care of running the cars when the sheep were struck; no evidence of a trespass in throwing down fences which let in the cattle; the fences thrown down appearing to have been across the right of way which had passed to defendant. Neither is there any evidence that those fences which defendant had the right to take down were removed in a negligent or imprudent manner, so as to injure the rights of others. The plaintiff could not have been prejudiced by any instructions on these counts, and, therefore, it is unnecessary to review them. They could not have been more prejudicial than one to the effect that the plaintiff on the evidence could not recover on such counts, and an instruction of that import, if asked, ought to have been given.

The only question necessary for us to consider, involves the correctness of the instructions given for defendant, re-

1. RAILROADS: fences: killing stock: trespass of stock.

lating to the statutory actions contained in the first and third counts. As already stated these instructions denied any right of action on these counts before the road was completed, and before the defendant had commenced to run cars upon it for the carriage of freight and passengers for hire. This right of action need not be considered with reference to the effect of the contract of construction which was entered into with the Chicago & Alton Railroad. The effect of that contract was urged only in the instructions on the common law counts. We have considered the proposition contained in the instructions, and, in our judgment, it cannot be maintained either upon principle or authority. The 3rd section of the Railroad Act, after the amendment of 1877, more perfectly than before, was intended to afford protection to adjoining proprietors in respect to their stock and crops. The railroads were required to fence their tracks for two purposes. One was to prevent stock from straying on the track, the other was to prevent stock from trespassing upon the adjoining fields. Double damages were given to the owner of the stock killed on the track, and double

damages given to the owners of the fields suffering from trespass of stock by reason of any failure to fence the road. It is true this statute also tended to secure passengers and employes of the road from accidents on the track, but the primary and moving object of the statute must have been for the benefit and protection of the parties designated in the statute as owners and proprietors of land and stock, to whom alone double damages were given for injuries and trespass thereto.

The fundamental rule which governs courts in the interpretation of statutes requires them to give such construction as shall, in the most complete manner, effect the known purpose and object of the statute, provided the language is adequate to afford such construction without violating the obvious meaning of its words and terms. In respect to the first count in the petition which relates solely to the killing of stock on the track, it is evident that no obligation rested on the company to erect any fences before it was possible for any stock to be killed by the engines or cars of the road. The owners of the stock could not be injured before the company commenced to operate engines and cars upon its track, and for that reason they needed no protection before that time. But after the company had begun to operate engines and cars on its road for any purpose whatever, the necessity of protection began; and if the purpose of the statute is to be maintained, the obligation to fence the road must also begin at the same time. The instruction of the court to the effect that it did not begin until the company was operating engines and cars on the track in the carriage of freight and passengers for hire, was clearly erroneous. It is the same thing to the owner whether his stock has been killed by a construction train or lightning express filled with passengers. There is nothing in the reason or language of the statute to justify the courts in postponing the statutory obligation of the company to fence the track, until it is receiving an income from the carriage of freight and passengers. In building a long road, its construction

trains might be run for years before it commenced to carry freight and passengers for hire.

The learned counsel for defendant has cited the case of *Comings v. H. & Central M. R. R. Co.*, 48 Mo. 512, in support of his construction. This case will be noticed more particularly when we come to consider the third count. It is sufficient here to say, that the case was not for the killing of stock by the agents, engines or cars of the road. The court, upon the facts of that case, used the following language: "We think the reasonable construction of the statute is that it requires corporations to have their fences built at least as soon as they commence running their roads." The court does not intimate any exemption of the company from the obligation to fence while they are running one part of the road for the purpose of constructing another part.

In regard to the third count, which relates to damages suffered by reason of stock escaping from their inclosures and entering upon adjoining fields, the instruction that the liability of the company under the statute does not begin until the company has commenced to operate its engines and cars in the carriage of freight or passengers for hire, is equally erroneous. The obligation to build fences as a protection against such damages was not contained in the statutes of 1855. They contained only the provision against the killing of stock on the road. It was held, in the construction of this statute, that railroads were not under any obligation whatever to build fences to protect adjoining fields from incursions of stock. *Clark's Adm'r v. H. & St. Jo. R. R. Co.*, 36 Mo. 202. After this decision, the legislature added the provision to that effect, which, after the amendment of 1877, appears as section 809 of our present revision. We are unable to perceive why the duty to build fences for this purpose is not as imperative as for the purpose of preventing collisions with stock on the track. There is a marked distinction in the character, but not in the necessity of the two provisions.

It will be observed that this provision, in question, has not, like the other, any necessary connection with the running of trains. As soon as the railroad removes the fence extending across its right of way, which it has lawful authority to remove in the construction of its road, the fields are thrown open to the incursions of stock. The necessity of a fence at that time is as urgent as we have seen it to be under the other provision when the road begins to operate its trains. The liability to damage and the necessity for the fence is created by the act of the company, and the statute would fall short of its admitted purpose, if it failed to impose the duty to fence as soon as this liability to injury was caused by the company. There is nothing in the language of the statute to indicate that the legislature intended to postpone this duty till the company had commenced to operate trains for any purpose at all. The clause providing that the land-owner may build the fence at the expense of the company if it neglects for three months after completion of the road to build the fence, does not purport to relieve the road from any responsibility for damages in the meantime. On the contrary, it is expressly recited that "until such fences, etc., are made, etc., such corporation shall be liable in double the amount of all damages," resulting from a want of fences.

In the case of *Comings v. H. & Central M. R. R. Co.*, 48 Mo. 512, the learned judge who wrote the opinion, did not assume to lay down any rule by which future cases could be governed. Following the supreme court of Vermont in *Clark v. Vermont R. R. Co.*, 28 Vt. 103, he holds that fences should be up at least as soon as cars commence running. He declines to rule as a matter of law, that they should be built before that time. Neither does he, as a matter of law, exempt the company from building before that time. Adopting the language of the case in Vermont he remarks : "Though we cannot say, as matter of law, that the defendants were bound to erect fences before or while they were constructing their road through any par-

ticular land-holder's premises, yet we can say they must exercise their right with a prudent regard to the rights of others; and if lacking in this duty, they are chargeable with negligence and must answer for its consequences."

Of course, as a matter of law, no court would undertake to indicate the exact time at which the statutory liability for double damages would attach in respect to any particular portion of the road. The law does not require impossible or impracticable things under this statute. And the time for the liability to attach must necessarily vary according to the circumstances surrounding each case. When the fence across the highway is taken down at a given point, the materials to fence the adjoining fields may be at hand, or easily accessible, and as the necessity for the fence is apparent, the obligation of the statute ought to attach in its full force after a reasonable time has elapsed for building the fence. Again, there may be cases possibly in which it would be impossible or impracticable for the company to procure and transport material for building fences, before the track was ironed and equipped with rolling stock sufficient to carry the material to the point where it was wanted. In such cases the liability of the statute would not follow so close on the heels of the necessity as in the former case, but ought, as in that case, to attach after the lapse of a reasonable time for doing the thing required by the statute to be done. The obvious and rational rule of law governing both provisions of this statute is, that after the company, in the construction of its track, has given rise to the want of a fence, the liability of the statute for failure to build one will attach after a sufficient and reasonable length of time, according to the circumstances of each case, has elapsed to build one.

Whether, under the circumstances of any particular case, the company could have practically made the fence at the time of the damage, is a question for the jury to decide. There is nothing new in this rule. It has been already adopted in this as well as in other states, and applied to the

liability of railroads under the same or similar statutes; which required the companies to maintain roads as well as to build fences. When by reason of a storm or other accident, the fence built by the road, is out of repair, the liability of the road for double damages does not attach at the instant of the accident, but only after a reasonable and sufficient time has elapsed for restoring it to its former condition. Thompson on Neg., 524; *Clardy v. St. Louis, I. M. & S. R'y Co.*, 73 Mo. 576.

In the case at bar the evidence of the plaintiff tended to prove that the road was constructed and completed through the plaintiff's lands in the month of May, 1878, at which time his fences were thrown down and his crops subjected to the incursions of .stock; and that no fences were built by the company for his protection until sometime in the fall of the same year; that his sheep were killed by the trains in August, and that two-thirds of the damage to his crops occurred after completion of the road across his land. Whether, under the circumstances of this case, the company could easily have built their fence before the injuries complained of, was not considered by the court nor submitted to the jury. The court disposed of the whole matter by ruling that the liability of the company could not attach until it had commenced to operate trains for the carriage of freight and passengers for hire. This doctrine, in my judgment, is against reason, justice and authority.

As the case should be remanded for another trial, I will add a few words bearing on the effect of the contract of construction which was entered into with the Chicago & Alton Railroad. There is nothing special in that contract requiring that company to build the fences as the road was constructed. And if there was it could not relieve the defendant from the duty of building or causing the fences to be built. The statute imposes this duty on the defendant, and the liability for a breach of it cannot be escaped by merely making a contract with another person to perform it—that other person

in this case being a foreign corporation. *Shepard v. Buffalo R. R. Co.*, 35 N. Y. 641. It has been held in this State that in respect to those things which a railroad has the lawful right to perform, such as excavation on its right of way, taking down fences therein, etc., the company is exempt from liability for damages resulting from a negligent performance of the same by a contractor of the company or his employes, to whom the work or job has been given over by the company. *Clark's Adm'r v. H. & St. Jo. R. R. Co.*, 36 Mo. 202; *Ullman v. H. & St. Jo. R. R. Co.*, 67 Mo. 118. But there is a well settled exception to this rule in respect to the omission of a duty enjoined it by statute as the owner of property. Such duty cannot be escaped by an engagement with another to perform it. *Hole v. R. R. Co.*, 6 Hurl. & N. 488; *McCafferty v. R. R. Co.*, 61 N. Y. 178; *Ryder v. Thomas*, 13 Hun 296.

Upon the whole the conclusion is that this case should be reversed and remanded for trial in accordance with the principles expressed in this opinion. PHILIPS, C., concurs; WINSLOW, C., absent.