JAMES M. GORDON, Respondent, v. THE CHICAGO, SANTA
FE AND CALIFORNIA RAILWAY COMPANY,
Appellant.

44 201
d156s390

St. Louis Court of Appeals, February 24, 1891.

1. **Railroads:** LIABILITY FOR ESCAPE OF STOCK THROUGH NEGLECT OF
COMPANY TO FENCE. Assuming that a railway company which
fails to fence its road pursuant to the requirement of the statute
( R. S. 1889, sec. 2611) is liable for the escape of stock resulting
from its default, even when such stock is not killed or injured on
its right of way, still its liability must be restricted to losses which,
under general principles of the law, are the proximate conse-
quences of its default. And *held* that the railway company was
not responsible for the loss of stock. which had thus escaped from
adjoining unfenced lands, and then been killed by employes of a
contractor engaged in the construction of its road.

2. —— : LIABILITY FOR DAMAGE FROM STOCK COMING ON UNFENCED LANDS. If, owing to the failure of the railway company to fence its right of way, stock enters upon the adjoining lands and destroys crops growing thereon, the railway company is under said statute liable for double the damages thus occasioned.

3. —— : OBLIGATION TO FENCE. The obligation of the railway company to fence attaches as soon as the necessity for the protection to the owners of land and stock begins. The company is not entitled to postpone the building of fences, until its road is so far constructed as to enable it to obtain material from a distance.

*Appeal from the Scotland Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED AND REMANDED ( *nisi* ).

*Gardiner Lathrop, Smoot & Pettingill* and *S. W. Moore,* for appellant.

(1) Revised Statutes, 1889, section 2611, is a penal statute, and so far as it is regarded as punitive should be strictly construed. *Parish v. Railroad,* 63 Mo. 284. (2) A railroad company is not liable in double damages, under this statute, for an injury to stock which does not result from direct or actual collision with the engine or cars. *Lafferty v. Railroad,* 44 Mo. 291 ; *Hughes v. Railroad,* 66 Mo. 325 ; *Siebert v. Railroad,* 72 Mo. 565 ; *Silver v. Railroad,* 78 Mo. 528 ; *Halfort v. Railroad,* 82 Mo. 90 ; *Foster v. Railroad,* 90 Mo. 116 ; *Gilbert v. Railroad,* 23 Mo. App. 65 ; *Croy v. Railroad,* 19 Am. & Eng. R. R. Cases, 608 ; *Railroad v. Shoemaker,* 22 Am. & Eng. R. R. Cases, 565 ; *Knight v. Railroad,* 23 Am. & Eng. R. R. Cases, 188 ; *Holder v. Railroad,* 13 Am. & Eng. R. R. Cases, 567 ; *Moore v. Railroad,* 31 Am. & Eng. R. R. Cases, 572 ; *Railroad v. Dunlap,* 31 Am. & Eng. R. R. Cases, 512 ; *Railroad v. Hughes,* 31 Am. & Eng. R. R. Cases, 569. (3) When a railroad company, in the construction of its roadbed, takes down fences, and thereby throws fields open to stock, its liability for double damages does not begin until the

lapse of a reasonable time for the procuring of material and the erection of fences. *Silver v. Railroad*, 78 Mo. 528. (4) Where, as in this case, the evidence does not show that the whole of the crop was destroyed, the measure of damages, when plaintiff is entitled to recover at all, is the actual value of the part destroyed; and the rental value of the whole field is immaterial. *Railroad v. Young*, 13 Am. & Eng. R. R. Cases, 544; *Smith v. Railroad*, 83 Iowa, 518; *Donald v. Railroad*, 44 Iowa, 157. The same principle is declared by other courts when they say, that in determining the amount of damages, in actions of this kind, the jury may consider how much less the pasture was worth than it would have been had the fences been constructed, and the difference is to be measured by the cost of herding cattle in the pasture ( *Raridon v. Railroad*, 29 N. W. Rep. 599 ), or the depreciation in the rental value. *Nelson v. Railroad*, 40 Am. & Eng. R. R. Cases, 234. (5) Where there are two separate causes of action in the petition, a general verdict or finding for plaintiff is erroneous. *Bricker v. Railroad*, 83 Mo. 391; *Lancaster v. Ins. Co.*, 92 Mo. 460; *Owens v. Railroad*, 58 Mo. 386.

*E. Scofield* and *McKee & Jayne*, for respondent.

Section 809 of the Revised Statutes of Missouri of 1879, at page 139, of volume 1, under which section this action is prosecuted, concerning the liability of railroad companies, provides as follows : " Until fences * * * shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done * * * by reason of any horses, cattle, mules or other animals escaping from or coming upon said lands, fields or inclosures occasioned by the failure to construct or maintain such fences. We further rely on *Clark's Adm'r v. Railroad*, 36 Mo. 202; *Ullman v. Railroad*, 67 Mo. 118; *Silver v. Railroad*, 78 Mo. 528.

Appellants contend that liability does not attach until reasonable time has elapsed in which to erect fences, and cite in support of that proposition *Silver v. Railroad*, 78 Mo. 528. At page 536 thereof, the learned judge delivering the opinion of the court says: "The law does not require impossibilities or impracticable things under this statute." The rule is, when damage is suffered by reason of the company's failure to fence, the statute applies. The exception is when impossible or impracticable, it does not. The exception is a defense that must be pleaded and proven.

THOMPSON, J.—This action is brought under section 2611 of the Revised Statutes, 1889 ( R. S. 1879, sec. 809 ), to recover the sum of $600, being double the damages alleged to have been sustained by the plaintiff by reason of the failure of the defendant railway company to fence its right of way, where its road passes over a farm occupied by the plaintiff as tenant of another.

The first count of the petition charged that the defendant was engaged in the construction of its road through the plaintiff's pasture from July 15, 1887, to March 1, 1888, and that, by reason of its omission to erect fences along the sides of its right of way, the plaintiff suffered damages in three ways: *First*, that he was deprived of the use of his pasture; *secondly*, that animals came in upon his pasture and destroyed the grass; and, *thirdly*, that his own cattle escaped from the pasture and became "sore, lame, impoverished and restless," one animal being wholly lost. The second count made substantially the same allegations against the Chicago, Santa Fe & California Railway Company of Iowa for a period from March 1, 1887, to July 15, 1887, and charged that the defendant as its successor became liable therefor.

The answer of the defendant admitted that the right of way was not fenced until March 1, 1888, and

alleged that the construction of the road was begun in 1887, and that prior to July 15, 1887, the road was not ironed, and that the fencing of the right of way was impracticable by reason of inability to procure and transport material therefor.

From the evidence it appeared that the grading of the roadbed of the defendant was begun over the property in question in March, 1887, and for that purpose the fences were taken down by the subcontractors engaged in grading. From that time up to the fifteenth of July, 1887, no track was laid, and there was no way of shipping material for the construction of fences direct by rail to that point, but it could be hauled from Arbela, a station on another road six or seven miles distant.

An analysis of the pleadings and evidence will make the following conclusions appear: The two counts of the plaintiff's petition do not stand, in relation to the facts on which they predicate his right of recovery, in a historical order. The whole period of the damage claimed in both counts is the year elapsing from the first of April, 1887, to the first of March, 1888. This period is divided into two parts, the point of division being the fifteenth of July, 1887. The *first* count claims damages for the *second* period and the *second* count claims damages for the *first* period.

The damages claimed by the first count covering the second period from July 15, 1887, to March 1, 1888, are $200 in all, of which $100 is alleged to be the value of the grass and pasturage, destroyed by cattle coming in upon the field at a point where the defendant failed to erect and maintain a fence, as required by the statute, the *rest* of the aggregate damages claimed in this count consisted of his cattle escaping from his pasture and becoming sore, lame, impoverished and restless, and one of them being wholly lost. We must, therefore, regard this count of the petition as laying these latter damages at the sum of $100.

The damages claimed by the second count of his petition, covering the period from April 1, to July 15, 1887, were damages to the grass and pasture by reason of cattle, mules and hogs coming upon the lands in consequence of the failure of the defendant's predecessor to fence, as above stated, in the sum of $60, and damages by reason of his cattle escaping from his pasture and becoming sore, diseased, lame, impoverished and restless, in consequence of the same failure to fence, in the sum of $40.

Next let us see what the plaintiff's evidence tended to prove in respect of these two elements of damage under each count. Under the first count, covering the period therein expressed, the plaintiff's evidence fairly tended to prove the value of the grass and pasture destroyed to be $150, and his loss by his cattle escaping and losing flesh $200. Under the second count, and covering the period therein named, his evidence places the value of the grass and pasture at $150, and his loss by his cattle escaping, $40.

The cause was tried by the court sitting as a jury, and the court made the finding in favor of the plaintiff for $200 damages under the first count and for $100 under the second count, and, doubling the damages under the statute, gave judgment for $600.

I. The first assignment of error is, that the court erred in admitting evidence of damages occasioned by the plaintiff's cattle escaping from his pasture by reason of the failure of the defendant to fence its track, and including this element in its award of damages. We have concluded, after carefully analyzing the pleadings and evidence, that is not necessary to consider this question. There was no evidence of damage, which might be ascribed to the plaintiff's cattle escaping from his pasture by reason of the failure of the defendant to fence, except a *shrinkage in flesh*. There was no evidence as to the particular manner in which this shrinkage in flesh was produced. There was no evidence that

it was produced by the cattle becoming "sore, diseased, lame or restless," in any other way than might be fairly ascribed to their losing their pasture. Now, the award of damage made by the circuit court gives the plaintiff the full damage which he claims under the first count, which, under the pleadings and evidence (for the damages must be kept within the allegations of the petition), can only mean $100 for the damage to the pasture, and $100 by reason of the cattle becoming impoverished, because they strayed away, and did not eat the pasturage. This is plainly a duplication of damages, and one or the other item must be rejected. As the members of this court are not agreed on the question, whether damages can be given under the statute for cattle escaping from the land of the land-owner, except where they are killed or injured on the defendant's right of way, we must reject the item which relates to the cattle becoming impoverished, and affirm that which relates to the value of the pasture, one being under the evidence a mere duplication of the other.

This disposes of the question so far as the first count is concerned, except as to the loss of one of the plaintiff's cattle claimed in that count. His evidence is to the effect that, during the period covered by the first count, a steer, of the value of $40, escaped from his pasture and was never found. His evidence furnishes no particulars as to the date, the place, or circumstances of this escape; but he testifies that he is satisfied that the men of the contractors killed it. Assuming that the statute was intended to give damages to the land-owner for any losses, which he might sustain by reason of his cattle straying away into the country in consequence of the failure of the railroad company to fence its right of way, as required by the statute, yet it is clear that it does not intend to give any damages, which are not the proximate consequence of the default of the railroad company under the general principles of law.

The damages, which can be given under the statute, must be of such a nature that it can reasonably be concluded that they would not have happened, if the animal had not escaped. Suppose, for instance, that the evidence had shown that this steer had escaped from the pasture in consequence of the defendant's default, and had been struck by lightning and killed while out in the country. As this would have been mere casualty, something which might as well have happened while in the pasture as out of it, the loss could not be regarded as a proximate consequence of the defendant's failure to fence. So, if the steer was killed by the men of the contractors, as the evidence fails to show that they did not have just as good an opportunity to kill it and conceal their crime while it was in the pasture, as out of it, the loss of it, happening in that way, could not be regarded as a proximate consequence of the defendant's failure to fence. We must, therefore, hold that there was no evidence to support the first count of his petition as to this item of damage; and this entirely disposes of the first count, so far as concerns the question which we are considering.

Taking up the second count with reference to the question of damages, the evidence tends to show the value of the pasturage, destroyed during the period covered by this count, to have been $150, and the plaintiff's damages by reason of his cattle escaping and becoming impoverished to have been $40. So far as this element of the cattle becoming impoverished is concerned, there is no evidence from which an inference could be drawn that they became impoverished in any other way than by the loss of their pasturage. We must, therefore, treat the evidence under this count as we did the evidence under the first count, and hold that the plaintiff is entitled to the value of his grass and pasture, in so far as he has laid it in his petition, and not to additional damages because his cattle did not eat

the grass. This will be the most favorable view for him, which can be taken under the pleadings and evidence ; for it will give him $60 which he alleges to be the value of his grass and pasture during this period, instead of $40 which he alleges to have been the damages to his stock by reason of their escaping. This disposes of the second count, so far as concerns the question of damages.

Of course, it is not necessary to do more than suggest that a party cannot recover damages which he proves, but does not allege. Under the view which we have taken of the evidence we give the plaintiff all the damages which he *both* alleges and proves, when we hold that he can retain his verdict and judgment for $100 damages under his first count, and $60 damages under his second count, and have them doubled under the statute, if he will remit the excess. This renders it unnecessary to consider whether damages can be given under the statute for cattle "escaping from" (to use the words of the statute) the land of the plaintiff, where they are not killed or injured on the defendant's right of way.

We may add that the case of *Silver v. Railroad*, 78 Mo. 528, distinctly recognizes the operation of the second clause of the statute, in so far as it gives double damages for injuries to growing crops in consequence of animals entering open fields, which are left open by the failure of the railroad company to fence its right of way. The express words of the statute, as above seen, extend the right of recovery to cases where damages accruing by reason of animals "coming upon" fields thus thrown open. The language of the statute is this : "And, until fences, openings, gates and farm crossings and cattle-guards as aforesaid shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done by its agents, engines or cars, to horses. cattle, mules or other

animals *escaping from or coming upon* said lands, fields or inclosures, occasioned in either case by the failure to construct or maintain such fences or cattle-guards." The statute thus provides for two kinds of damages: *First.* Such as shall be done to animals by the agents, engines or cars of the railway company; and, *second,* such as may happen by reason of animals escaping from or *coming upon* the lands thus left open and exposed. Whatever may be the view taken as to the damages which are to be given where the animals *escape from* the land, it is clear that the statute gives, in express language, damages which accrue to the land-owner "by reason of any horses, cattle, mules or other animals, * * * coming upon said land;" and the ordinary damages under this head would be damages for the destruction of his crop or pasturage.

II. The next proposition is, that the liability of the company *for double damages* did not begin until the lapse of a reasonable time for procuring the material and the erection of the fences. The decision of the supreme court in *Silver v. Railroad,* 78 Mo. 528, does not go so far as counsel for the defendant claims. On the contrary, it holds that, when the necessity for protection to the owners of the land and to their stock begins, then the obligation to fence attaches. It expressly holds that this obligation is not postponed until the completion of the road. But assuming, for the sake of argument, the defendant's position to be sound, it would not follow that the trial court committed any error. The delay, it is perceived, is admitted to have been about a year. It cannot be said, as matter of law, that this was a reasonable delay under the circumstances disclosed by the evidence. Still less can we affirm this, where, in the absence of rulings upon instructions, we do not even know what view the trial court, sitting as a jury, took of the evidence. The defendant's theory seems to be, that it was entitled to

delay this statutory duty, so far as regards its liability
to double damages, until its road was ironed, so that it
could procure lumber from a distant point.  This is not
only opposed to the decision in *Silver v. Railroad*,
*supra*, but it would be untenable under any' theory,
where, as in this case, the railway company failed to
show, what might reasonably be presumed in a settled
country, that it could not procure the necessary lumber
and materials in the neighborhood before the comple-
tion of its road.   Besides the plaintiff's evidence tended
to show that the defendant might have had such lumber
and materials delivered at a station on another railroad,
which was but six or seven miles away, and this was
not contradicted.

III.   The next two propositions of the appellant
relate to the supposed error of the trial court in allow-
ing damages for the *rental value* of the whole field.
The plaintiff testified that the *damages* to his pasture
land, by reason of cattle coming upon it over the defend-
ant's right of way during the period embraced in his
first count, was $250, and during the period embraced in
his *second* count $150.   A witness for the plaintiff
placed the *value* of the pasture $150 for each period.  The
evidence tends to show that, by the act of defendant's
contractors, it was thrown open for a whole year.   It
consisted of two hundred and sixty acres.   As no
instructions were asked on the measure of damages, we
cannot assume that the trial court awarded damages
based upon the theory of rental value, the damages
awarded being within the plaintiff's evidence as to the
amount of the destruction.   Our holding that the dam-
ages must be remitted, so as to reduce them to double
the sum of $160, makes it more clear that the defendant
is left with no reasonable grounds of complaint under
this head.

The judgment of this court is that, if the plaintiff,
within two weeks from the filing of this opinion, remits

The St. Louis, K. C. & C. Ry. Co. v. Lewright.

so much of his judgment as is in excess of $320, it will be affirmed for that amount; otherwise it will be reversed and the cause remanded. It is so ordered. All the judges concur.