Argued March 26, decided April 16, 1912.

## STATE OF OREGON *v.* STANDARD OIL CO.

[123 Pac. 40.]

CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS—NONRESIDENT CORPORATION.

1. A nonresident corporation doing business in the State may invoke the right to equal protection of the laws, guaranteed under the Fourteenth Amendment of the Constitution of the United States.

STATUTES—INTERPRETATION CLAUSE—CONSTRUCTION.

2. While any provision of a statute which declares its meaning or purpose is authoritative, an interpretation clause, employed to make particular words mean different or more than they would naturally signify, will be construed strictly, and with due regard to the proper construction of the entire statute.

STATUTE—INTERPRETATION CLAUSE—NATURE.

3. When the interpretation clause of a statute declares that a particular word shall include a variety of things, not within its general meaning, it is a provision by way of extension and not a definition by which other things are excluded.

STATUTES—CONSTRUCTION.

4. The rule that the mention of one case in any particular clause of a statute excludes others does not apply, where the language may fairly comprehend many different cases, though only part of these cases are expressly mentioned.   '

CONSTITUTIONAL LAW—CONSTRUCTION IN FAVOR OF VALIDITY.

5. An act will, if possible, be so constructed and applied as to avoid conflict with the constitution.

CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS—GROSS EARNINGS
        TAX—OIL COMPANIES.

6. Laws 1907, p. 9, § 1 (Section 3544, L. O. L.), provides that every oil company doing business in the State shall pay a gross earnings tax. Laws 1907, p. 10, § 4 (Section 3547, L. O. L.), states that nonresident persons, and corporations dealing in petroleum products in the State and their representatives, and residents whose business with any such nonresidents amounts to 25 per cent of the residents' business, shall be deemed oil companies. *Held*, that Section 4 does not exempt any residents of the State from the operation of the statute; and there is therefore no denial by the statute, through discrimination between residents and nonresidents, of the equal protection of the law guaranteed by the Fourteenth Amendment of the Constitution of the United States.

COMMERCE—GROSS EARNINGS TAX—OIL COMPANIES.

7. Section 3544 *et seq.*, L. O. L., which taxes alike the gross earnings in the State of resident and nonresident oil companies, is not void as a regulation and taxation of interstate commerce..

COMMERCE—TAXATION—DISCRIMINATION AGAINST NONRESIDENT.

8. Laws 1907, p. 9, § 1 (Section 3544, L. O. L.), provides that all oil companies doing business in the State shall pay a gross earnings tax. Laws 1907, p. 10, § 4 (Section 3547, L. O. L.) provides that nonresident persons or corporations engaged in the business of buying and selling petroleum in its various products in the State, and all persons and corporations doing business in the State, as the representatives of the aforesaid persons or corporations, on commission, or otherwise, and any persons or corporations resident within this State, or incorporated under its laws, engaged in the business of buying and selling oil produced, obtained, or refined by the aforesaid nonresident persons and corporations, and whose business, done annually, in such special line amounts in the gross to 25 per cent of the total annual gross receipts of such persons or corporations from all lines in which they deal, and any persons or corporations, whenever incorporated engaged in the business of operating cars or the transportation of such

oil in this State over lines in whole or in part within the State, such lines not being owned or leased by such persons or corporations, shall be deemed oil companies, within the meaning of the act. *Held,* that the exemption of all persons or companies whose business amounted to less than 25 per cent of the total annual gross receipts applies to all oil companies or persons whose business in oil in this State does not amount to the figure named; and hence the statute does not discriminate against nonresidents, and therefore the statute is not violative of the commerce clause of the federal constitution—it having reference to intrastate oil business alone.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE BEAN.

This is an action brought by the State of Oregon to recover from the Standard Oil Company, a corporation doing business in Oregon, taxes upon the gross earnings of such defendant for the period from June 26, 1906, to December 31, 1906, and for the years of 1907 and 1908, pursuant to the provisions of an act proposed by the initiative and adopted by the people June 4, 1906, and proclaimed by the Governor June 25, 1906, being Sections 3544 to 3550, inclusive, of Lord's Oregon Laws.

Upon the third cause of action for the tax of 1908, the circuit court rendered a judgment in favor of defendant. This consideration was upon the ground that the act authorizing the tax had then been repealed. No appeal was taken by plaintiff. From a judgment in favor of plaintiff upon the first and second causes of action for the sum of $12,091.66, defendant appeals.

The defendant, by its answer, denies the right of plaintiff to maintain the action, and avers: "That the oil, in which the business upon which said license is demanded of this defendant was conducted, was shipped to the State of Oregon by this defendant from points in states of the United States outside of the State of Oregon; that about ninety-six (96) per cent of the gross receipts of this defendant, referred to in said cause of action, from said business, and upon which said license

is demanded by plaintiff, was derived by defendant from the sale, in the State of Oregon, of oil produced and refined by this defendant in the state of California, and shipped by this defendant from said state to its agent in the State of Oregon for distribution and delivery in said State of Oregon by said agent; that about four (4) per cent of said gross receipts were derived by defendant from the sale in the State of Oregon, of oil produced and refined by certain persons, to-wit, residents of states of the United States other than the states of Oregon and California, and purchased by this defendant from said persons last referred to, and shipped by this defendant from states outside of the State of Oregon to said last-named State for distribution and delivery therein. * *" That the act is in violation of Article I, Section 8, of the Constitution of the United States, and in violation of defendant's rights, privileges, and immunities under the above section, because such measure purports to tax commerce between the states, to-wit, between the State of Oregon and other states, and discriminates against such commerce by reason of the nonresidence of defendant and persons which said act purports to tax, and in favor of residents of the State of Oregon engaged in similar commerce within this State.

Defendant has complied with the act of February 16, 1903, entitled "An act to provide for the licensing of domestic corporations and foreign corporations, joint stock companies and associations," etc.   On November 9, 1906, the Secretary of State of the State of Oregon issued defendant a certificate of authority to do business in the State, and the latter designated an attorney upon whom process might be served under the act, entitling it to transact business in Oregon.

Section 1 of the act in question (Section 3544, L. O. L.) provides:

"That in addition to the taxes now provided for by law, every * * oil company, doing business in this State, shall pay to the State of Oregon, a license of three (3) per centum upon the gross earnings of such company in this State, which license shall be paid annually by such company to the treasurer of this State."

Section 4 (3547, L. O. L.) is as follows:

"Any nonresident person or persons and every joint stock company or corporation not having its principal place of business within this State, or not being organized or incorporated under the laws of the State of Oregon, engaged in the business of buying and selling or buying or selling (petroleum in its various products), within the State of Oregon, and any and all persons, companies, and corporations doing business in this State as the representative of any or either of the aforesaid persons or corporations, on commission or otherwise, and any person or persons, joint stock company, or corporation, resident within this State or organized or incorporated under the laws thereof, engaged in the business of buying and selling oil (petroleum in its various products) produced, obtained, or refined by either or any of the aforesaid nonresident persons, companines, or corporations, and whose business done annually in such special line amounts in the gross to twenty-five per centum of the total annual gross receipts of such persons, company, or corporations from all lines in which he or it deals, and any person or persons, joint stock company, or corporation, whether organized or incorporated, engaged in the business of operating cars for the transportation of such oil in this State on or over any railway line or lines in whole or in part within the State of Oregon, such line or lines not being owned or leased by, such person, company, or corporation, shall be deemed an oil company, within the meaning of this act."

AFFIRMED.

For appellant there was a brief over the names of *Mr. E. S. Pillsbury, Mr. William D. Fenton, Mr. Ben C. Day, Mr. James E. Fenton* (*Messrs. Pillsbury, Madison*

*& Sutro,* of Counsel) with oral arguments by *Mr. Pillsbury* and *Mr. Fenton.*

For respondent there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac H. Van Winkle,* Assistant Attorney General, and *Mr. Roy F. Shields,* 2nd Assistant Attorney General, with oral arguments by *Mr. Crawford* and *Mr. Van Winkle.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. It is first contended by counsel for defendant that the act denies to persons within the jurisdiction of the State of Oregon the equal protection of the laws, in violation of the Fourteenth Amendment of the Constitution of the United States. It is well settled that a corporation is a person within the meaning of the fourteenth amendment. *Sullivan* v. *O. R. & N. Co.,* 19 Or. 321 (24 Pac. 408) ; *Santa Clara County* v. *Southern Pacific R. Co.,* 118 U. S. 394 (6 Sup. Ct. 1132: 30 L. Ed. 118) ; *Minn. & St. Louis Ry. Co.* v. *Beckwith,* 129 U. S. 26 (9 Sup. Ct. 207: 32 L. Ed. 585) ; *Southern Ry. Co.* v. *Samuel E. Greene,* 216 U. S. 400, 412 (30 Sup. Ct. 287: 54 L. Ed. 536: 17 Ann. Cas. 1247. It is also well settled that a corporation of one state doing business in another state, under such circumstances as to be directly subject to its process at the instance of suitors, may invoke the right of equal protection under the Fourteenth Amendment. *Northwestern National Life Insurance Co.* v. *Riggs,* 203 U. S. 243, 253 (27 Sup. Ct. 126: 51 L. Ed. 168: 7 Ann. Cas. 1104) ; *Blake* v. *McClung,* 172 U. S. 239 (19 Sup. Ct. 165: 43 L. Ed. 432; *American Smelting & Refining Co.* v. *Colorado,* 204 U. S. 103 (27 Sup. Ct. 198: 51 L. Ed. 393: 9 Ann. Cas. 978).

The defendant has the right to invoke the guaranty of the Fourteenth Amendment. As has been stated on various occasions, this clause requires that no greater burdens shall be laid upon one than are laid upon others

under like circumstances (*Barbier* v. *Connolly,* 113 U. S. 27: 5 Sup. Ct. 357: 28 L. Ed. 923) ; that all persons shall be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed (*Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293; 18 Sup. Ct. 594; 42 L. Ed. 1037) ; that under this clause a person is entitled to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon, other persons in a like situation. *Southern Ry. Co.* v. *Samuel E. Greene,* 216 U. S. 400, 412 (30 Sup. Ct. 287: 54 L. Ed. 536: 17 Ann. Cas. 1247) ; See, also, *Portland Fish Co.* v. *Benson,* 56 Or. 147 (108 Pac. 122) ; *Atchison, Topeka & Santa Fe R. Co.* v. *Matthews,* 174 U. S. 96, 104 (19 Sup. Ct. 609: 43 L. Ed. 909). It has been held that this clause of the constitution does not require of the states an iron rule of equality of taxation; nevertheless, in accordance with the general rule, classification for the purpose of taxation must be reasonable; and all persons similarly situated shall be equally taxed. *State* v. *Wright,* 53 Or. 344 (100 Pac. 296: 21 L. R. A. [N. S.] 349). *In re Yot Sang* (D. C.) 75 Fed. 983; *Fraser* v. *McConway & Torley Co.,* (C. C.) 82 Fed. 257; *Juniata Limestone Co.* v. *Fagley,* 187 Pa. 193 (40 Atl. 977; 42 L. R. A. 442; 67 Am. St. Rep. 579).

The case at bar, therefore, depends upon the construction of the statute imposing the tax. It is conceded by both counsel that the term "oil company," as used in Section 1 of the statute, plainly includes all individuals, joint-stock companies, partnerships, and corporations whatsover, whether resident or nonresident, of the State of Oregon. The question is: Does the interpretation clause in Section 4 exempt residents of the State of Oregon from the provisions of the act? Upon this question, the opinions of the learned counsel for the respective parties diverge. Counsel for defendant state that

the vice of the act, in the light of the Fourteenth Amendment, is the denial of the equal protection of the laws by an unreasonable and arbitrary classification and discrimination between residents and nonresidents.   Counsel for the State maintain that the statute under consideration taxes residents as well as nonresidents; consequently there is no denial of the "equal protection of the laws," nor of the privileges and immunities of citizens of the several states.   The position of defendant is that, although residents of the State of Oregon are included in Section 1 of the act, they are exempted by Section 4, for the reason that they are not named therein.

2. We find, as to the rule for the construction of interpretation clauses, that any provision in a statute which declares its meaning or purpose is authoritative.   Any contemporaneous construction of the same words by the lawmakers is high evidence of the sense intended.   It has been said that an interpretation clause should be used for the purpose of interpreting words which are ambiguous or equivocal; not so as to disturb the meaning of such as are plain.   It is often inserted for this purpose, or for abundant caution, that there may be no misapprehension, though the interpretation so directed is not different from that which the language used would otherwise receive.   In such cases, this provision leads to no diffculties of construction.   When, however, the clause is employed, as it often is, to make particular words mean something different or more than they would naturally and ordinarily signify, it should be construed strictly.   When a concise term is used which is to include other subjects besides the actual thing designated by the words, it must also be used with due regard to the true, proper, and legitimate construction of the act.   2 Lewis, Southerland, Statutory Construction, § 576.   Such clauses often perform much the same

office as a guideboard having no index to point the direction. They have been discussed with marked disfavor in England, as they embarrass, rather than assist, the courts in their decisions. "It has been very much doubted," says Lord St. Leonards, L. C., "and I concur in that doubt, whether these interpretation clauses, which are of modern origin, have not introduced more mischief than they have avoided; for they have attempted to put a general construction on words which do not admit of such a construction in the different senses in which they are introduced in the various parts of an act of parliament." 2 Lewis, Southerland, Statutory Construction, § 577.

3. Where the interpretation clause is that a particular word shall include a variety of things, not within its general meaning, it is a provision by way of extension, and not a definition by which other things are excluded. When the meaning is thus extended, the natural and ordinary sense is not taken away. Id. § 578, citing *Ex parte Ferguson,* L. R. 6 Q. B. 279, *291, where an act provided that the word " 'ship' shall include every description of vessel used in navigation not propelled by oars." On the question whether a fishing boat 24 feet feet long, partially decked over, and fitted with two masts and a rudder, and also with four oars, which were sometimes used, was a ship, within the meaning of the act, Mr. Justice BLACKBURN said: "The argument against the proposition is one which I have heard very frequently, viz., where an act says certain words shall include a certain thing, that the words must apply exclusively to that which they are to include. That is not so; the definition given of a 'ship' is in order that 'ship' may have a more extensive meaning. Whether a ship is propelled by oars or not, it is still a ship, unless the words 'not propelled by oars' exclude all vessels which are ever propelled by oars."

In *Pound* v. *Plumstead Board of Works,* L. R. 7 Q. B. 183, at page 194, the same learned judge said: "* * And it does not follow that because, in the interpretation clause, they say the expression 'new street' shall include certain other things, we are to say it does not include its own natural sense."

In *Jones* v. *Cook,* L. R. 6 Q. B. 505, it was declared that petroleum should include all such rock oil, etc., as gave off an inflammable vapor at a temperature of less than 100 degrees Fahrenheit. Petroleum itself was held to be within the act, even if it did not give off an inflammable vapor below the specified temperature.

In 26 Am. & Eng. Enc. Law (2 ed.) 680, we find, in regard to a proviso as aiding construction of enacting clauses, the following: "* * Such clauses are often introduced from excessive caution, and for the purpose of preventing a possible misinterpretation of the act by including therein that which was not intended; the rule is therefore not one of universal obligation, and must yield to the cardinal rule which requires the court to give effect to the general intent, if that can be discovered within the four corners of the act. If such general intention would be defeated by construing the act as embracing everything of the same general description as those particularly excepted therefrom, an arbitrary application of the rule is not admissible." See, also, *Dollar Savings Bank* v. *United States,* 19 Wall. 227 (22 L. Ed. 80).

In *The Queen* v. *Kershaw,* 26 Com. Law Reports (Law Jr. 1857, N. S.), at page 22, 6 E. & B. 999, 1007, it was contended for the appellants that at an election the poll was invalid, because no person ought to have been admitted to vote at the election who was not actually rated to the highway rate; and the fifth section of 5 and 6 Will. IV, c. 50, was relied upon as explaining the meaning of

the sixth section that the word "inhabitant" means a person rated to the highway rate. Justice ERLE said: "There is nothing in the first part of section 6 to exclude any inhabitant from voting at the election of surveyor of highways who is entitled to be present at the nomination of overseers of the poor, and no doubt every one rated to the poor would be entitled to attend and to vote, though not rated to the highway rate. Then, as to the point arising out of the interpretation clause, if section 5 had said that the word 'inhabitant' should only mean a person rated, the construction would have been different. But the words are that 'inhabitant' shall be understood 'to include any person rated,' and other parts of the section show that the word 'include' is used in the sense of extention, and not as a difinition, as when it is said that the word 'church' shall be understood to include chapel."

4. In the construction of a statute, where the court finds, in any particular clause, an expression not so large and extensive in its import as those used in other parts of the same statute, if, upon a review of the whole act, the real intention of the legislature can be collected from the larger and more extensive expressions used in other parts, effect will be given to the larger expression. *State* v. *Jennings,* 27 Ark. 419.

It is contended by defendant's counsel that, by construing section 4 of the act and applying the maxim, *"Expressio unius est exclusio alterius,"* the statute does nor purport to tax residents of Oregon. This maxim does not apply to a statute, the language of which may fairly comprehend many different cases, in which some only are expressly mentioned, and not as excluding others of a similar nature. If there is some special reason for mentioning one, and none for mentioning a second, which is otherwise within the statute, the absence

of any mention of the latter will not exclude it.   2 Lewis, Sutherland, Statutory Construction, § 495.

5. Whenever an act can be so construed and applied as to avoid conflict with the constitution and give it the force of law, this will be done.   Where one construction will make a statute void on account of conflict with the constitution, and another would render it valid, the latter will be adopted.   Every intendment should be made in favor of the constitutionality of a statute.   The lawmakers are presumed to. act in view of the constitution, and not to intend a violation of its provisions or the enactment of an invalid law.   2 Lewis, Sutherland, Statutory Construction, § 498.

In *French* v. *Teschemaker*, 24 Cal. 518, 554, it is said that, if a particular construction has the effect to declare the act, or any part of it, not constitutional, such construction must be avoided, when it can be fairly done; for the legal presumption is that the legislature could not have so intended.

In *People ex rel.* v. *Feitner*, 191 N. Y. 88, 97 (83 N. E. 592, 595), the court say: "A statute, however, will not be adjudged to violate the constitution if, by any reasonable construction,. it can be given a meaning in harmony with that instrument. 'As every presumption is in favor of the statute, if it is open to two constructions, one of which would obey and the other violate the constitution, the universal rule of courts is to select the former'"—citing *People ex rel. Simpson* v. *Wells*, 181 N. Y. 252, 257 (73 N. E. 1025).

In the case of the *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 121 (30 Sup. Ct. 496, 498: 54 L. Ed. 688), the court, in discussing a similar question where it was contended that the statute was class legislation, because the tax was levied on wholesale dealers in oil, and in which case an occupation tax was involved, held that

Sig. 15

there was no discrimination, so long as all persons in the same class were equally affected. Mr. Justice HARLAN, says: "It is not questioned that the state may classify occupations for purposes of taxation. In its descretion, it may tax all, or it may tax one or some, taking care to accord to all in the same class equality of rights. The statute in respect of the particular class of wholesale dealers mentioned in it is to be referred to the governmental power of the state, in its discretion, to classify occupations for purposes of taxation. The state, keeping within the limits of its own fundamental law, can adopt any system of taxation or any classification that it deems best by it for the common good and the maintenance of its government, provided such classification be not in violation of the fourteenth amendment. * * That so far as the power of the United States is concerned, the state has the right, by any rule it deems proper, to classify persons or businesses for the purposes of taxation, subject to the condition that such classification shall not be in violation of the Constitution of the United States; that the requirement by the state that all wholesale dealers in specified articles shall pay a tax of a given amount on their occupation, without exacting a similar tax on the occupations of wholesale dealers in other articles, cannot, on the face of the statute, or by reason of any facts within the judicial knowledge of the court, be held, within the meaning of the fourteenth amendment, to deprive the taxpayer of his property without process of law, or to deny him the equal protection of the laws. * *" In this case it was decided that a statute imposing an annual tax of 2 per cent upon the gross receipts in the wholesale business of coal oil, etc., in that state, was not in violation of the fourteenth amendment.

In the case of *Bell's Gap R. Co.* v. *Penn.*, 134 U. S.

232, 237 (10 Sup. Ct. 533, 535: 33 L. Ed. 892), the court say: "The provision in the fourteenth amendment that no state shall deny to any person within its jurisdiction the equal protection of the laws was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; * * but clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition." See, also, *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 562 (22 Sup. Ct. 431: 46 L. Ed. 679), and *Singer Mfg. Co.* v. *Wright,* 97 Ga. 114, 117 (25 S. E. 249: 35 L. R. A. 497).

6. Applying the principles enunciated by the above authorities, which we think are sound and reasonable, Section 1 of the act in question purports to impose a burden alike upon a resident and a nonresident oil company or person; and the interpretation clause in Section 4 does not exempt residents of the State of Oregon from the operation of the act. The latter section does not say that only nonresident corporations or persons "shall be deemed an oil company within the meaning of the act." This section appears to have been inserted by the lawmakers in order that there might be no doubt as to the nonresident companies doing business in this State in a certain manner, or residents of the State buying and selling oil for nonresidents on commission. Taking the act in question

as a whole, and giving it the meaning intended by the lawmakers, as indicated by its language, we think there is no discrimination between residents and nonresidents of the State of Oregon, or any denial of the "equal protection of the laws," as guaranteed by the Fourteenth Amendment of our Federal Constitution, and that the tax provided for by the act is uniform.

As to what proportion of the oil business in this State will be done by residents or nonresidents, or as to what proportion will be shipped into this State, in any certain year, it is impossible for the lawmakers or any one to determine in advance as no one can state where or when oil will be struck by those seeking it. What the reward of the future will be for labor performed or money expended in delving for oil cannot be told.

7. It is also contended, on behalf of the defendant, that the act in question is void as a regulation and taxation of interstate commerce. This contention, however, is based upon the premise that the act discriminates in favor of residents and domestic products as against nonresidents and foreign products, which we have already considered.

The rule is stated in the late case of *Brown-Forman Co.* v. *Commonwealth of Kentucky,* 217 U. S. 563, at page 575 (30 Sup. Ct. 578, at page 580: 54 L. Ed. 883), thus: "A system of taxation discriminating in favor of residents and domestic products and against nonresidents and foreign products might result in commercial nonintercourse between states, and as a regulation of interstate commerce would clearly be invalid."

In *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489, at page 497 (7 Sup. Ct. 592, 596: 30 L. Ed. 694), the court said: "When goods are sent from one state to another for sale, or, in consequence of a sale,

they become part of its general property and amenable to its laws, provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way as other goods are."—citing *Brown* v. *Huston,* 114 U. S. 622 (5 Sup. Ct. 1091: 29 L. Ed. 257) ; *Machine Co.* v. *Gage,* 100 U. S. 676 (25 L. Ed. 754).

Goods brought in original packages from another state, after they have arrived at their destination and are at rest within the State, and are enjoying the protection which the laws of the State afford, may, without violating the commerce clause of the constitution, be taxed without discrimination, like other property within the State. *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500 (24 Sup. Ct. 365: 48 L. Ed. 538).

In the case of *Kehrer* v. *Stewart,* 197 U. S. 60, at page 65 (25 Sup. Ct. 403) at page 404: 49 L. Ed. 663), the court say. "It was therefore held that the tax, so far as applied to meats sold in Chicago and shipped to the petitioner in Georgia for distribution, could not be supported; but that, so far as the petitioner was engaged in the business of selling directly to customers in Atlanta, he was engaged in carrying on an independent business as a wholesale dealer, and was liable to the tax. The decision was correct. In carrying on the domestic business, petitioner was indistinguishable from the ordinary butcher, who slaughters cattle and sells their carcasses; and in principle it made no difference that the cattle were slaughtered in Chicago and their carcasses sent to Atlanta for sale and consumption in the ordinary course of trade. Upon arrival there, they became a part of the taxable property of the state. It made no difference whence they came and to whom they were ultimately sold, or whether the domestic and inter-

state business were carried on in the same or different buildings."

It is shown by defendant's answer that the gross receipts, upon which the State seeks to collect the tax, were derived by defendant from the sale of oil in the State of Oregon. It is not shown by the record that the defendant shipped the oil into this State, consigned directly to purchasers on orders previously taken, or that the defendant sold the same while contained "in original package." And it does not appear from the record or upon the face of the act in question that it was the intention to lay any tax upon the interstate commerce of shipping the products of oil into the State, to be directly or indirectly delivered to purchasers whose orders were obtained before the goods were shipped. The tax was applied only to business within the State, and not to that which is interstate in character. See *Armour Packing Co.* v. *Lacy,* 200 U. S. 226 (26 Sup. Ct. 232: 50 L. Ed. 451) and *Osborne* v. *Florida,* 164 U. S. 650 (17 Sup. Ct. 214: 41 L. Ed. 586). It is not claimed or shown by the record that the tax imposed is unreasonable or oppressive.

8. It is also contended by counsel for defendant that the act under consideration, according to their construction, of Section 4, discriminates in favor of residents, not agents for nonresidents, whose business in oil produced by nonresidents does not equal 25 per centum of their total annual business. While the language of this section is not smooth, applying the principles heretofore adverted to, and construing Section 4 together with Section 1, we think any nonresident, or representative of a nonresident, or resident of Oregon, engaged in the oil business in this State, whose business, done annually, in such special lines amounts in the gross to 25 per centum of the total annual gross receipts of such person, company, or corporation from

all lines in which he or it deals, is subject to the tax. In other words, in the classification of oil companies, the statute exempts all oil companies or persons whose business in oil in this State does not amount to 25 per centum of such total annual gross receipts. This classification does not appear to be unreasonable or arbitrary.

Much stress is laid on the meaning of the word "such," in the latter part of the interpretation clause, as signifying that the statute imposed the tax only upon oil produced by nonresidents of the State of Oregon. We think the word "such," as used in Section 4, means "petroleum in its various products," and was used merely to save repetition. Giving this meaning to the statute, we think there is no discrimination in favor of residents of the State of Oregon, and that the enactment pertains only to intrastate oil business, and does not interfere with interstate commerce.

The judgment of the lower court is therefore affirmed.

AFFIRMED.

Mr. Justice BURNETT took no part in the consideration of this case.