HELEN T. STANLEY, as Administratrix, etc., *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee*.

No. 17,760.

SYLLABUS BY THE COURT.

1. RAILROADS—*Right of Way—Demand for Fences—Agreement.* Under a statute requiring a railroad company, upon demand of an adjoining landowner, to fence its right of way where this is necessary to complete an enclosure, if the company under an agreement with the landowner builds and maintains such fence there is no occasion for a demand.

2. —— *Fences — Maintenance by New Railroad Company.* Where after the building of such fence under such circumstances the railroad and land change ownership and the new railroad company continues to maintain the fence, rebuilding and repairing it from time to time, the situation is the same as though the fence had been built by the new company in compliance with a demand by the new owner of the land.

3. —— *Fences — Damage to Stock Not on Right of Way.* Where a railroad company is under legal obligation to fence its track, it is liable for the losses of an adjoining landowner, occasioned by the escape of his cattle from an enclosure due to its negligently allowing the fence to be in bad repair, although they are not injured upon the right of way.

4. —— *Same.* Assuming that the right of the legislature to require a railroad company to fence its right of way is based solely upon the consideration that such fencing may be deemed necessary to diminish the danger of injury to animals by the operation of trains, and of injury to persons and property resulting from trains colliding with animals, it is competent as a means of enforcing such requirement to make the company liable for losses caused to the landowner by the escape of his cattle through a defective fence, although they receive no injury while upon the right of way.

5. —— *Fences—Negligence—Contributory Negligence.* Where the employees of a railway company while engaged in rebuilding a right-of-way fence which the company is under an obligation to maintain, remove a portion of it and erect a temporary barrier, by reason of the insufficiency of which cattle escape and are injured, the owner is not guilty of contributory negligence as a matter of law in failing to remedy the defect himself, although knowing of its existence, where

he has reason to believe that the company's employees, although absent from the place at the noon hour, will shortly resume work and complete the repairs.

6. ———— *Special Findings—Verdict.* Where the jury are asked what there was under such circumstances to prevent the owner from making the enclosure safe in the exercise of ordinary care, and reply that he expected the railway employees to return shortly and fix the fence, and that for him to have done so himself would have been to exercise extraordinary care, these answers are responsive and are consistent with a general verdict holding the company liable for negligence.

7. VERDICT — *Judgment on Special Findings—Motion for New Trial.* Where a defendant against whom a general verdict has been rendered files a motion for a judgment upon the special findings, and also one for a new trial, and the court sustains the motion for judgment in favor of the defendant, and solely because of this ruling denies the motion for a new trial, while finding that the verdict was contrary to the evidence, and upon appeal the order giving judgment for the defendant is reversed, the trial court should then pass upon the motion for a new trial upon its merits.

Appeal from Harper district court.   Opinion filed November 9, 1912.   Reversed.

*E. C. Wilcox,* of Anthony, for the appellant.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: Wyatt Stanley sued the Atchison, Topeka & Santa Fe Railway Company for damages resulting from the escape of cattle from his feed lot, alleged to have been due to the defendant's negligence. The plaintiff having died, the action was revived in the name of his administratrix. Upon a jury trial a general verdict was returned against the defendant, but judgment was rendered in its favor upon the special findings. The plaintiff appeals.

The evidence tended to show these facts: Stanley

kept a number of cattle in a feed lot one side of which was formed by the right-of-way fence. Employees of the company who were engaged in its repair removed a part of it, as well as a part of Stanley's fence which connected with it, and as a temporary protection strung two wires across the gap. The protection was insufficient and the cattle escaped. None of them was injured upon the right of way, but a number strayed and were not recovered, and others suffered injury, in some cases fatal.

The defendant maintains that in any view of the findings the judgment ought not to be reversed, for the reason that the petition does not state a cause of action, because the company was under no obligation to maintain the fence, except for the purpose of avoiding liability for animals killed or injured by its trains, and therefore can not be held accountable for any other kind of loss occasioned by the want of a sufficient fence. The original statute upon the subject does not in terms require a railroad right of way to be fenced. It makes the company responsible for animals killed or injured by the operation of its railway irrespective of negligence, except where the road is enclosed with a lawful fence. (Gen. Stat. 1909, §§ 7001, 7005.) It seems to be generally held that where a railway company is not required to fence its right of way, but does so voluntarily, it incurs no liability by reason of suffering it to become out of repair. (*Davis Bros. & Burke et al., v. Le Flore,* 26 Okla. 729, 110 Pac. 782; *Illinois Cent. R. Co. v. Clogston,* [Miss. 1911] 54 South. 75.) A statute similar to that cited has been held to impose a duty to fence. (*Sullivan v. O. R. & N. Co.,* 19 Ore. 319, 24 Pac. 408.) We need not determine, however, what the rights of the parties would be if this were the only statute applicable. There is a later one providing in effect that an adjoining landowner may, by making a demand, require a railroad company to fence its right of way

Stanley v. Railway Co.

where this is neccessary to complete an enclosure. (Gen. Stat. 1909, §§ 7075-7077.) The petition alleges that the fence was originally built at the expense of the company formerly owning the road, which agreed with the landowner, who had fenced the other sides of the adjoining tract, to maintain it; and that the company operating the road has ever since maintained it, rebuilding and replacing it from time to time. This is sufficient to dispense with a demand, even if that would ever be necessary where the fence had actually been built. The later statute imposes a duty on the railroad company to maintain the fence, and it is liable for any injury of which its neglect of such duty is the proximate cause. Cases somewhat in point are: *Gordon v. The Chicago, S. F. & C. Ry. Co.*, 44 Mo. App. 201; *Parish v. Louisville & N. R. Co.*, 25 Ky. Law. Rep. 1524, 78 S. W. 186. Illustrations of injuries held not to be proximately caused by the failure to fence are found in 41 Cent. Dig. cc. 3247-3250, § 1427. A note in 29 L. R. A., n. s., 573, on "liability of railroad whose failure to maintain fences permits escape of live stock, which is killed or injured outside its right of way," collects the cases bearing on that point, which show some conflict of opinion.

The defendant urges that the purpose of the statute referred to is to promote safety in the running of trains; that in this purpose is found the only warrant for imposing upon the railroad company the obligation to fence its right of way; and that therefore the company's liability must be limited to injuries resulting from the operation of the road, and the state has no power to make it liable for losses occasioned by the escape of animals which do not meet with any injury upon the right of way. Assuming that the right of the legislature to require a railroad company to fence its tracks is based solely upon the consideration that such fencing may be deemed necessary to diminish the

danger of injury to animals from the operation of trains, and to persons and property resulting from trains colliding with animals, it is competent as a means of enforcing such requirement to make the company liable for losses occasioned to the landowner by the escape of his cattle through a defective fence, although they pass from the right of way without injury.

The judgment in favor of the defendant was obviously based upon the theory that the special findings showed the plaintiff to have been guilty of contributory negligence in not having himself done something to secure the cattle, after acquiring knowledge of the condition in which the company's employees had left the fence. There were findings to the effect that the cattle escaped at about dusk; that a little after noon of the same day the plaintiff saw the fence, which was then in such condition that the cattle could readily pass out of the lot, and took no steps to make the enclosure stronger or safer; that the employees of the company did no work on the fence that day. Stanley testified at a former trial, and the testimony was used at this one, that his cattle had got out a week or ten days before, and he had asked the company's agent to have the fence fixed; that at noon of the day in question he saw the fence and thought it was not strong enough to hold a bunch of cattle, but it had stood the night before, so he left it; that new holes had been dug and new posts laid beside them, but not set; that he saw a car on the switch about fifty yards away and supposed material and tools were on the car; that he did nothing with the fence, but told his hands to feed the cattle in the part of the lot farthest from the gap. There was testimony that this was done. In the light of this evidence we think it was a fair question for the jury to determine whether under the facts as established by the findings referred to Stanley was guilty of contributory negligence in failing to take any further precaution. There is room for

a reasonable conclusion that, while acting with ordinary prudence, he believed that the company's employees would shortly resume their work and would prosecute it with diligence so that the fence would be repaired before the cattle were likely to escape. It can not be said as a matter of law that he was bound to anticipate that the fence would be left in the same condition for the rest of the day.

The jury were asked: "If said Stanley observed the condition of said wires about one o'clock on the day the cattle escaped, could he by use of ordinary care have made said enclosure safer and prevented his cattle from escaping at the point where they escaped that evening?" They answered: "No, it would have taken extraordinary care." Another question was: "If Wyatt Stanley observed the condition of the wires about one o'clock of the day on which said cattle escaped, what, if anything, was there to prevent him from making said enclosure safe by the exercise of ordinary care on his part, so as to prevent the escape of his cattle at said place?" The jury at first returned the answer: "We think Mr. Stanley expected the fence gang to return that afternoon to fix the fence." Upon the request of the defendant the court required the jury to make a different response to this question, and their second answer read: "We don't know."

Ordinarily when the jury are asked whether a certain fact exists, a reply that they do not know is equivalent to a statement that the evidence does not persuade them of its existence, and amounts to a finding against the party upon whom the burden of proving it rests. (*Morrow, et al., v. Comm'rs of Saline Co.*, 21 Kan. 484; *A. T. & S. F. Rld. Co. v. Lannigan*, 56 Kan. 109, 42 Pac. 343.) The defendant maintains that upon this principle the jury are to be regarded as having found that there was nothing to prevent Stanley from making the enclosure safe by the exercise of ordinary care; in other

words, that if he had exercised ordinary care he would have made the enclosure safe. We do not think this is a fair interpretation of the findings when viewed in the light of the entire record. The two questions quoted are substantially the same. Each involves two propositions, first, whether Stanley could have made the enclosure safe, and second whether to have done so would have been the exercise of only ordinary care, that is, whether ordinary care required him to do so. There was of course nothing to prevent Stanley from building a barrier himself if he so desired. The really vital part of the question is whether he was obliged to do so in order to be regarded as exercising ordinary diligence. In answer to the question first quoted the jury said that he could not have made the fence safe by the use of ordinary care—that it would have taken extraordinary care. The meaning seems to be, not that the plaintiff was physically prevented from making the enclosure safer, or would have encountered any extraordinary obstacle in doing so, but that an ordinarily careful man would not have regarded it as necessary under the circumstances. Upon the same grounds we regard the original answer to the other question as responsive. In view of the general verdict and the other findings we think it must be held to mean that Stanley expected the fence gang to return during the afternoon and fix the fence; that this belief on his part was reasonable, and in reliance upon it he was justified in taking no further steps on his own part; in other words, his belief that the fence gang would shortly return prevented the duty to exercise ordinary care from requiring him to make the enclosure safe himself. The subsequent answer of the jury, upon this being held insufficient, that they did not know, must be regarded as meaning that they did not know of anything that prevented Stanley from acting, beyond what they had already stated—his belief that the employees of the company would make action on his part unnecessary.

The defendant, in addition to its motion in the district court for a judgment in its favor on the special findings, filed a motion for a new trial. The court overruled this for the sole reason that the defendant's motion for judgment had been sustained, finding at the same time that the general verdict was contrary to the evidence. A judgment can not be ordered upon a general verdict that has not the approval of the trial court. (*K. C. W. & N. W. Rld. Co. v. Ryan,* 49 Kan. 1, 30 Pac. 108.) Therefore, the judgment for the defendant being reversed, the cause is remanded with directions that the court pass upon the motion for a new trial upon its merits.